UNITED STATES of America,
Appellant,

v.

Beecher Belve ROBINSON, Jr., Appellee.

Nos. 78–5067, 78–5068.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 16, 1978.

Decided March 8, 1979.

Ronald L. Motley, Barnwell, S.C. (Terry E. Richardson, Jr., Barnwell, S.C., on brief), for appellant.

John P. Linton, Charleston, S.C. (Robert H. Hood, Sinkler Gibbs & Simons, Charleston, S.C., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, RUSSELL, Circuit Judge, and THOMSEN *, Senior District Judge.

* Senior District Judge for the District of Maryland, Sitting by Designation.

**574**

William B. Cummings, U.S. Atty., Alexandria, Va. (Justin W. Williams, Asst. U.S. Atty., Creed C. Black, Jr., Sp. Asst. U.S. Atty., Alexandria, Va., on brief), for appellant.

John Kenneth Zwerling, Richmond, Va. (Zwerling & Shapiro, Richmond, Va., on brief), for appellee.

Before WIDENER and HALL, Circuit Judges, and HOFFMAN,* District Judge.

WIDENER, Circuit Judge:

The defendant, Beecher Belve Robinson, Jr., was indicted in four counts as a convicted felon for possession of firearms, 18 U.S. C.App. § 1202(a), and for receipt of firearms, 18 U.S.C. § 922(h)(1). In a suppression hearing held prior to trial, the defendant moved to suppress all statements he had made to police officers (he had two interviews with a federal agent while in custody on a state breaking and entering charge) during the investigation of this and related cases. The district court suppressed the statements to the federal agents because in its view they were "patently involuntary."[1] On December 16, 1977, the government filed a notice of appeal under 18 U.S.C. § 3731 and simultaneously filed a motion for a continuance of the trial court proceedings. The case originally had been scheduled for trial on December 22, 1977. On that date, the district judge denied the motion for continuance and called the case for trial. The government stated that it was not prepared to try the case without the suppressed statements. The district court then dismissed the indictment for want of prosecution over the government's objection. The government appeals from the denial of the continuance and the dismissal of the indictment. We hold that the confession was not patently involuntary and that the trial court abused its discretion by refusing to grant a continuance. We therefore reverse and remand for further proceedings.

---

* Senior District Judge, Eastern District of Virginia, sitting by designation.

1. We consider the case in this light to give the benefit of the doubt to the defendant and not close the matter out at this time. The district court also said that it based its ruling on the fact that "the confession and the manner and form [in which] it was obtained . . . was not voluntary." We refrain from expressing an opinion on the voluntariness of the statements at this time.

The granting of the motion to suppress in this case is appealable by the government under 18 U.S.C. § 3731, and the first issue before us is whether the district court abused its discretion in refusing to grant the government's request for a continuance pending appeal. We believe the answer to this question can be found in the legislative history of § 3731. Prior to 1968, the government was not able to appeal from the granting of a motion to suppress evidence. See *DiBella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); *Carroll v. United States*, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957). Congress remedied this situation in 1968 by amending § 3731 to allow the government to appeal from suppression orders. P.L. 90–351, 82 Stat. 237. The legislative history of this and like legislation reveals two of the major purposes behind the amendment. See H.Rep. No. 603, 90th Cong., 1st Sess. (Aug. 24, 1967) (to accompany H.R. 8654); 114 Cong.Rec. 14787 (May 23, 1968); 113 Cong. Rec. 24946 (Sept. 11, 1967); S.Rep. No. 91–1296, 91st Cong. 2d Sess. (Oct. 8, 1970). First, the amendment was designed to foster a consistent development of Fourth Amendment law. The lack of full appellate review prior to 1968 resulted in inconsistent district court rulings which contributed to the general uncertainty in the law of search and seizure and confessions. By allowing the government to appeal, Congress was told the courts of appeals and the Supreme Court would have a better opportunity to pass on important questions in this area more quickly. This appellate guidance would help reduce the inconsistency in trial court decisions and aid the development of a rapidly expanding area of constitutional litigation. See H.Rep. No. 603 supra, at 3; 114 Cong.Rec. at 14788 (remarks of Senator Allott); 113 Cong.Rec. at 24947 (remarks of Congressman Railsback). As the House Committee on the Judiciary recognized in an earlier report on the same subject:

> Ironically, the ultimate question of whether the district judge was right initially in suppressing the evidence cannot be determined, because the Government lacks the right to appeal this preliminary ruling. And without the right to appeal, the Government cannot obtain decisions from the appellate courts which would further help to formulate and establish definitive case law on the subject. It is obvious that with 94 United States district courts, with 330 district judges, each having its own views as to what constitutes an illegal search, there never will be achieved any degree of uniformity in the Federal law until the Government is granted the right to appeal. Even judges within the same district are not in agreement as to what constitutes an unreasonable search. Where a search will be approved by one, it will be suppressed by another. H.Rep. No. 1478, 85th Cong., 2d Sess. 15 (April 28, 1958).

Second, the amendment was meant to relieve the government of the very substantial burden it faced when a defendant's motion to suppress evidence was granted. The government's dilemma was two-fold. In each individual case the government had two unappealing choices when evidence was suppressed. It could proceed to trial without the evidence, but if the defendant were acquitted the case would be over and no appeal could be taken. Alternately, the government could dismiss the indictment. "Therefore, in many instances the granting of such a motion [to suppress] is, in effect, a final order bringing the prosecution to an end, for the Government is unable to proceed without the suppressed evidence. In such cases, if the Government does proceed, it must do so under severe handicaps and limitations." H.Rep. No. 603 supra, at 2–3. A similar dilemma faced the government on a broader policy level. When a district court disapproved a specific evidence gathering technique by granting a suppression motion, the government, without the benefit of appellate review, had to either abandon a potentially permissible investigative practice or continue the practice and face the prospect of future suppressions by the district court. See Remarks of Senator Allott, 114 Cong.Rec. at 14788.

██ It is also clear that Congress intended this amendment to be construed liberal-

ly. After the provision was first enacted, some courts construed it narrowly. E. g., *United States v. Greely,* 134 U.S.App.D.C. 196, 413 F.2d 1103 (1969). Congress was aware of these cases and when amending § 3731 in 1971 a new paragraph (d) was added. It states that "the provisions of this section shall be liberally construed to effectuate its purposes." P.L. 91–644, 84 Stat. 1890; S.Rep. No. 91–1296, 91st Cong., 2d Sess. 18; see *United States v. Calandra,* 455 F.2d 750, 752 (6th Cir. 1972).

■ Based on the legislative history discussed above, we are of opinion the district court's refusal to grant a continuance in the case at bar constituted an abuse of discretion. In effect, the district judge's ruling places the government in the same dilemma it faced prior to the 1968 amendment of § 3731. The government either must go to trial without evidence which may be crucial to its case or it must dismiss the indictment. It the government goes to trial without the evidence and the defendant is acquitted, then an appellate decision may not be obtained since the defendant is constitutionally protected from another trial. We think the intended course in the ordinary case of this type is to grant a continuance pending appeal. Otherwise, the government is not allowed the benefit of appellate review which Congress clearly intended when it amended § 3731.

We do not hold, however, that a continuance must be granted in each instance. For example, in *United States v. Chulengarian,* 538 F.2d 553 (4th Cir. 1976), we held that it was not an abuse of discretion to deny a motion for continuance on two counts of an indictment pending appeal of a suppression order going only to a third count. In *Chulengarian,* as noted, the suppressed evidence was relevant only to count I of the indictment. The district court granted a continuance on this count, but required the government to go to trial on counts II and III. In the case at bar the suppressed evidence went to each count of the indictment. Therefore, the holding in *Chulengarian* does not apply. While we do not attempt to anticipate other situations where the discre-

tion to deny a motion for continuance may be appropriate, it is clear that the trial court abused its discretion in the case at hand by not examining it in the light of the legislative history and purpose of the statute. The defendant has not charged bad faith on the part of the government, has not raised any speedy trial issues, and does not even allege any prejudice not connected with the evidence suppressed. The trial court should have granted the motion for continuance and should not have dismissed the indictment.

We now turn to the merits of the appeal. The evidence sought to be suppressed consisted of statements made by the defendant to a Special Agent from the Bureau of Alcohol, Tobacco and Firearms during two interviews held while the defendant was in custody after arrest on a State breaking and entering charge which involved the theft of firearms. The defendant's statements revealed that he had not participated in the breaking and entering, and that he had apparently received the guns from a third party without knowing they were stolen. These statements, while exculpatory on the State charge, amounted to a confession of a federal crime since the defendant was a convicted felon.

There is no evidence in the record with respect to the matter at hand except copies of the statements made by Robinson, the testimony of the Special Agent who interviewed him, and a copy of a *Miranda* card. On the basis of this evidence alone, and before hearing any evidence from the defendant, the district court granted the motion to suppress, ruling that the statements made by Robinson were "patently involuntary." Since the testimony of the Special Agent was uncontradicted (no defense evidence was heard before the motion was granted), the district court in effect ruled that the Special Agent's testimony, on its face, demonstrated that the statement was made involuntarily. We disagree.

■ The Special Agent testified that the defendant was read his *Miranda* rights before each statement was taken and that the defendant stated he understood those

rights. The waivers were not signed by the defendant on standard waiver forms sometimes used by the government, but the waiver does appear in the body of the second statement taken. It is clear that no particular procedure is constitutionally required. *United States v. Hayes*, 385 F.2d 375, 377 (4th Cir. 1967), cert. den., 390 U.S. 1006, 88 S.Ct. 1250, 20 L.Ed.2d 106 (1968). The agent identified himself and told Robinson that he was investigating possible federal firearms violations. There was some indication that the defendant could not read or write well, but the agent's testimony shows that this problem was cured through a careful process in which the defendant dictated his statement to the Special Agent who read the statement back to him before the defendant signed it. Thus, on its face, the evidence shows that the statements were voluntary. Reading between the lines, it may appear that the district court may not have believed the Special Agent's testimony, or held that a separate waiver form was required, see *Hayes*, supra, but we do not consider here that either was the basis for its ruling. It held that the defendant's statements were "patently involuntary," i. e., that from the face of the testimony it was clear that the statements were involuntary. The credibility of the Special Agent therefore is not in issue unless his testimony was, on its face, inherently incredible, which it was not.

■ Thus, the ruling of the district court was in error. We do not hold, however, that the defendant's statements necessarily are admissible. The defendant did not present his case before the trial judge ruled, and on remand the entire suppression hearing should be held anew with the opportunity for both sides to present such evidence as they may be so advised.

We conclude that the district court abused its discretion in denying the government's motion for a continuance pending appeal, and in dismissing the indictment, and that, on the merits, the statements made by the defendant were not patently involuntary. Accordingly, the judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.