STATE OF CONNECTICUT *v.* JERRY WILSON

BOGDANSKI, SPEZIALE, PETERS, HEALEY and PARSKEY, Js.

Argued October 14, 1980—decision released March 10, 1981

*Joseph M. Shortall,* chief public defender, for the appellant (defendant).

*Richard L. Shiffrin,* assistant state's attorney, with whom were *Maryann Perry* and, on the brief, *John M. Bailey,* state's attorney, and *Robert M. Meyers,* chief assistant state's attorney, for the appellee (state).

SPEZIALE, J. The dispositive issue on this appeal is whether the defendant knowingly and intelli-

gently waived his rights under *Miranda* v. *Arizona*,[1] 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), before making his oral confession to the police.

The defendant, Jerry Wilson, was charged with robbery in the first degree in violation of § 53a-134 (a) (2) of the General Statutes. He was tried to a jury and found guilty. The defendant has appealed, claiming, inter alia, that the trial court erred in admitting evidence of the defendant's oral confession which was given to the police while he was in custody. We agree. The judgment, therefore, is set aside and a new trial is ordered.[2]

On Friday, April 21, 1978, three men robbed a store in Hartford. The next night, Saturday, April 22, 1978, while the defendant was in custody at the Farmington police station on another matter, two Hartford police detectives,[3] Madison Bolden and Robert Beltrandi, were sent to Farmington. Bolden

[1] In *Miranda* the United States Supreme Court held that a person who has been taken into custody or otherwise deprived of his freedom in any significant way "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda* v. *Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] The defendant also claims that the court erred in permitting an in-court identification by a witness who had identified him in an allegedly impermissibly suggestive pretrial photographic identification procedure. We have ordered a new trial based on the erroneous admission of evidence of the defendant's oral statement to the police; we do not now consider the identification issue because it involves factual determinations which should first be made by the trial court on retrial.

[3] The defendant was questioned that evening by two detectives from the Hartford police department. Our description of the questioning is based on the testimony of the two detectives at both the trial and the pretrial hearing on the defendant's motion to suppress the confession.

identified the defendant as "Jerry Wilson," whom he had known for approximately nine years. The officers then returned to Hartford. Later that evening, in response to a telephone call, they returned to the Farmington police station sometime between 11 p.m. and midnight. After Bolden introduced Beltrandi and himself as Hartford police officers, Bolden told the defendant that he was suspected of a robbery, and then read him the *Miranda* rights from a printed card. Bolden testified that after reading the entire[4] "rights card" to the defendant, he asked him if he understood his rights and the defendant's complete statement was a simple, "Yes, I do." Bolden *assumed* that the defendant understood him only because everyone that Bolden had talked to during his eleven years as a police officer had always understood him. Bolden testified that he had no idea of the defendant's level of intelligence or education. The defendant never stated that he waived his rights, nor that he was willing to answer questions. The detectives failed to ask the defendant if he wanted to waive his constitutional rights, and although the Hartford police department has a printed waiver form, the detectives did not have the form with them when they questioned the defendant.

During the interrogation that followed, the defendant confessed to his involvement in the robbery and related his version of the event. The defendant's confession was not recorded, nor was he asked to sign a written statement. Beltrandi testified that he took no notes of the interview and could not remember whether Bolden did. Bolden said he was pretty sure that he took notes, but that

---

[4] The defendant was not asked whether he understood *each* of his rights *as* he was advised of that right.

he discarded them after writing his "incident report." The entire testimony of both officers was solely from memory, without the use of either notes or the "incident report." There was evidence that the oral confession was not reduced to writing because the police detectives were in a hurry to return to Hartford before their shift ended at 1 a.m.

At the pretrial hearing the defendant took the witness stand voluntarily and testified that the detectives had not informed him of his rights and that he had not made any incriminating statements to them. On appeal the defendant no longer claims that he was not informed of his constitutional rights, but he persists in claiming that he did not waive them.

The defendant argues that the state has failed to show that he waived his privilege against self-incrimination, and that absent such a waiver the admission into evidence of his incriminating statements is a violation of his rights under both the United States and the Connecticut constitutions.[5]

Once the required warnings have been given, " '[i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently *waived* his privilege against self-incrimination and his right to retained or appointed counsel. *Escobedo* v. *Illinois,* 378 U.S. 478, 490 n.14 [84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964)]. This

---

[5] The fifth amendment to the United States constitution provides, in relevant part: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."

The constitution of Connecticut, article first, § 8, provides, in relevant part: "In all criminal prosecutions . . . . [n]o person shall be compelled to give evidence against himself . . . ."

Court has always set high standards of proof for the waiver of constitutional rights, *Johnson* v. *Zerbst,* 304 U.S. 458 [58 S. Ct. 1018, 82 L. Ed. 1461] (1938), and we re-assert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders.' " (Emphasis added.) *Tague* v. *Louisiana,* 444 U.S. 469, 470–71, 100 S. Ct. 652, 62 L. Ed. 2d 622 (1980) (quoting *Miranda* v. *Arizona,* 384 U.S. 436, 475, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)); *North Carolina* v. *Butler,* 441 U.S. 369, 372–73, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979).

Recently, in *North Carolina* v. *Butler,* supra, 373, the United States Supreme Court held that a waiver of the *Miranda* rights need not be by an express statement but may be inferred from the actions and words of the person interrogated. "The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. As was unequivocally said in *Miranda,* mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." Id., 373.

Here, we have the "silence" referred to by *North Carolina* v. *Butler,* supra, in that the record dis-

closes no verbal utterance by the defendant that he wanted either to rely on his rights or to waive them; therefore, before a conclusion of waiver can be supported, the state must demonstrate: (1) that the defendant *understood* his rights, and (2) that the defendant's *course of conduct* indicated that he did, in fact, waive those rights. *North Carolina* v. *Butler,* supra, 373. See *Tague* v. *Louisiana,* supra, 470; *State* v. *Derrico,* 181 Conn. 151, 169, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). As to whether the defendant understood[6] his constitutional rights, the only evidence presented was the testimony of Detective Bolden that after reading the entire litany of rights, he asked the defendant if he understood and the defendant replied simply, "Yes, I do." Bolden also testified that he had known the defendant for nine years but did not know his age or intelligence level and assumed that the defendant understood the warnings which were read to him because, in Detective Bolden's eleven years on the police force, everyone he had talked to had understood him. The record discloses no evidence whatsoever of the defendant's physical or mental condition, educational background, or other factors which could pro-

---

[6] In determining whether a person understands his constitutional rights many factors may be considered. See, e.g., *North Carolina* v. *Butler,* 441 U.S. 369, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979) (completion of an eleventh grade education and ability to read and write); *United States* v. *Cruz,* 603 F.2d 673 (7th Cir. 1979) (reading of rights to a suspect in his native tongue); *United States* v. *Robinson,* 593 F.2d 573 (4th Cir. 1979) (patient efforts of the interrogator to assist a suspect with reading and writing difficulties); *Mallott* v. *State,* 608 P.2d 737 (Alaska 1980) (physical and mental condition at the time of the warnings and confession); *State* v. *Cobbs,* 164 Conn. 402, 421, 324 A.2d 234, cert. denied, 414 U.S. 861, 94 S. Ct. 77, 38 L. Ed. 2d 112 (1973) (familiarity with *Miranda* rights through previous police and court experience).

vide a basis for determining his capacity to understand the *Miranda* warnings and the rights which they represent.

Concerning the defendant's course of conduct,[7] there is not one scintilla of evidence of any verbal or physical indication by the defendant that he either wanted to waive or did, in fact, waive his rights. Compare *State* v. *Moscone*, 171 Conn. 500, 506, 508, 370 A.2d 1030 (1976) (scanty record on defendant's willingness to talk after requesting an attorney). The only fact from which waiver might conceivably be inferred is the actual speaking of the inculpatory remarks by the defendant; but that is not enough. A valid waiver cannot be presumed "simply from the fact that a confession was in fact eventually obtained." *Miranda,* supra, 475.

"Just last Term, in holding that a waiver of *Miranda* rights need not be explicit but may be inferred from the actions and words of a person interrogated, we firmly reiterated that '[t]he courts must presume that a defendant did not waive his rights; the prosecution's burden is great. . . .' *North Carolina* v. *Butler,* 441 U.S. 369, 373 [99 S. Ct. 1755, 60 L. Ed. 2d 286] (1979)." *Tague* v. *Louisiana,* supra, 471. The state bears the burden of proving that the defendant "knowingly and intelligently waived his privilege against self-incrimin-

---

[7] There are many ways in which an individual can indicate, by word or deed, a willingness to forgo the protections of silence and legal counsel. See, e.g., *Fare* v. *Michael C.*, 442 U.S. 707, 99 S. Ct. 2560, 61 L. Ed. 2d 197, reh. denied, 444 U.S. 887, 100 S. Ct. 186, 62 L. Ed. 2d 121 (1979) (the words, "Yeah, I might talk to you"); *United States* v. *Payton,* 615 F.2d 922 (1st Cir.), cert. denied, 446 U.S. 969, 100 S. Ct. 2950, 64 L. Ed. 2d 830 (1980) (willingness to talk, reserving the right to terminate the interview if the questions became too specific); *Wantland* v. *State,* 45 Md. App. 527, 413 A.2d 1376 (1980) (agreement to give an oral but not a written statement).

ation." *Miranda* v. *Arizona,* 384 U.S. 436, 475, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). This burden need only be proved by a preponderance of the evidence, and not by proof beyond a reasonable doubt; *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *Derrico,* 181 Conn. 151, 162, 434 A.2d 356 (1980); however, even this lower standard of proof cannot be met unless there is some evidence on the issue. There is not one iota of evidence in this record that can be used to show that the defendant did or said anything to indicate that he waived his constitutional rights. The state has failed to sustain its burden. Here, as in *Tague* v. *Louisiana,* supra, 471, "no evidence at all was introduced to prove that petitioner knowingly and intelligently waived his rights before making the inculpatory statement. The statement was therefore inadmissible." Id., 471. Under the circumstances, we must conclude that the trial court erred in admitting evidence of the defendant's oral confession.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion PETERS, HEALEY and PARSKEY, Js., concurred.

BOGDANSKI, J. (dissenting). The result in this case is not mandated by *North Carolina* v. *Butler,* 441 U.S. 369, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979). That case held that a waiver of *Miranda* rights need not be by an express statement but may be inferred from the actions and words of the person interrogated. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case.

As was unequivocally said in *Miranda,* "mere silence is not enough." *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *North Carolina* v. *Butler,* supra, 373. Here we do not have the "silence" referred to by *North Carolina* v. *Butler.* When asked if he understood his constitutional rights, the defendant replied, "Yes, I do." No threats or promises were made to induce his confession. It is not necessary that a defendant state the words, "I waive my rights." The majority opinion expands upon *North Carolina* v. *Butler* by overlooking the defendant's admitted understanding of his rights when it examined the evidence that his course of conduct in freely speaking to the officers indicated a waiver of the rights which had been read to him. It is also not necessary that the state put on evidence showing the defendant's mental ability, educational level, lack of intoxication, etc. See, e.g., *United States* v. *Boston,* 508 F.2d 1171 (2d Cir. 1974), cert. denied, 421 U.S. 1001, 95 S. Ct. 2401, 44 L. Ed. 2d 669 (1975); *United States* v. *Speaks,* 453 F.2d 966 (1st Cir.), cert. denied, 405 U.S. 1071, 92 S. Ct. 1522, 31 L. Ed. 2d 804 (1972); *United States* v. *Stuckey,* 441 F.2d 1104 (3d Cir.), cert. denied, 404 U.S. 841, 92 S. Ct. 136, 30 L. Ed. 2d 76 (1971); *United States* v. *Hilliker,* 436 F.2d 101 (9th Cir. 1970), cert. denied, 401 U.S. 958, 91 S. Ct. 987, 28 L. Ed. 2d 242 (1971); *People* v. *Johnson,* 70 Cal. 2d 541, 450 P.2d 865, cert. denied, 395 U.S. 969, 89 S. Ct. 2120, 23 L. Ed. 2d 758 (1969), (holding that a "silent record" is a record which does not show that a defendant was informed of his rights), overruled on other grounds, 18 Cal. 3d 889, 558 P.2d 872 (1972); *People* v. *Weaver,* 179 Colo. 331, 500 P.2d 980 (1972).