STATE OF CONNECTICUT *v.* MICHAEL SEBASTIAN
(14984)

O'Connell, Landau and Shea, Js.

Argued December 1, 1995—officially released June 4, 1996

*Walter H. Scanlon*, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Maureen Keegan*, assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from his conviction of felony murder[1] in violation of General Statutes § 53a-54 (c), rendered after he entered a conditional plea of nolo contendere pursuant to General Statutes § 54-94a[2] and Practice Book § 4003.[3] The defendant

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

[2] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[3] Practice Book § 4003 provides: "(a) When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution. The court shall not accept a nolo contendere plea pursuant to this subsection where the denial of the motion to suppress would not have a significant impact upon the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere plea where the record available for review of the denial of the motion to suppress or motion to dismiss is inadequate for appellate review of the court's determination thereof.

"(b) With the approval of the court, after a hearing to consider any objections thereto, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any motion made prior to the close of evidence, which motion must be specified in such written reservation. If the defendant prevails on appeal, the judgment shall be set aside and the defendant shall be allowed to withdraw the conditional plea of nolo contendere after the case has been remanded to the trial court. The court shall not accept a plea of guilty or nolo contendere pursuant to this subsection where the adverse determination of the specified motion would not

claims that the trial court improperly (1) found that the defendant's oral admissions were separate from his written statement, (2) concluded that the defendant's oral admissions were made after a proper waiver of his *Miranda*[4] rights, (3) concluded that the defendant's oral statements were made voluntarily, (4) found that the defendant had been properly arraigned, thereby rendering his oral statements admissible, and (5) found that his admissions relative to the felony murder were made at a time when his detention was legal and therefore not the fruit of an illegal arrest. We affirm the judgment of the trial court.

The trial court found the following facts from the evidence adduced at the suppression hearing. Believing that the defendant was involved in a homicide that occurred during a burglary of Pauline Grincunas' apartment, Waterbury police officers invited the defendant to the police station for questioning. At the station, Sergeant Neil O'Leary and Sergeant Robert Henderson interviewed the defendant. Before beginning the interview, O'Leary informed the defendant of his *Miranda* rights. Initially, the defendant denied knowledge of the burglary or homicide, but orally incriminated himself in two other burglaries in the Grincunas neighborhood. Before this statement concerning the unrelated burglaries was reduced to writing, O'Leary again advised the defendant of his *Miranda* rights.

Approximately twelve hours after the defendant arrived at the police station, Anthony James, a codefendant in this case, inculpated himself in the Grincunas burglary, and, in a written statement, told police that

have a significant impact on the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere or guilty plea where the record available for review of the ruling upon the specified motion is inadequate for appellate review of the court's determination thereof."

[4] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

the defendant had killed Grincunas during the burglary of her apartment.

When confronted with James' confession, the defendant indicated that he wanted to change his earlier statement. After the defendant was again advised of his *Miranda* rights, the defendant implicated himself in the Grincunas burglary, but claimed that James had actually killed her. Before the defendant signed the written transcription of this oral confession, he was again advised of his *Miranda* rights.

While the defendant was reiterating his confession to the felony murder of Grincunas, his attorney arrived at the police station and asked to see him. Because the defendant was not informed that his attorney was present to represent him until after he had signed the confession, the trial court suppressed the written statement.

I

A

We must first address the threshold issue of whether the defendant may raise an issue on appeal other than the voluntariness of his statements under § 54-94a.

Section 54-94a enumerates the instances in which a defendant may appeal from a conditional nolo contendere plea. The relevant part of § 54-94a (a) allows a defendant to plead nolo contendere "conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress . . . statements and evidence based on the *involuntariness of a statement* . . . ." (Emphasis added.)

In strictly construing these conditions, our Supreme Court has declined to consider claims that are not encompassed within the statute. *State* v. *Madera*, 198 Conn. 92, 99, 503 A.2d 136 (1985). In *Madera*, for exam-

ple, the court refused to review the defendant's appeal of the denial of his motion to suppress on involuntariness grounds because, at that time, voluntariness did not come within the scope of § 54-94a. Subsequent to the court's refusal to consider the defendant's claim in *Madera*, the legislature amended § 54-94a to include challenges to the voluntariness of statements. Public Acts 1988, No. 88-19. In accordance with § 54-94a, we may therefore review only those claims that challenge the voluntariness of defendant's statements.

## B

Even though we may not review the defendant's claims that do not challenge voluntariness under § 54-94a, we must next determine if we may review them under Practice Book § 4003.[5] Section 4003 (a) tracks § 54-94a except that, unlike the statute, the rule of practice has never been amended to include involuntariness of a statement as a ground for a plea of nolo contendere. Thus, subsection (a) provides fewer grounds for appellate review of a conditional plea than does the statute, and we are barred from reviewing an involuntariness claim under this rule of practice. *State* v. *Piorkowski*, 236 Conn. 388, 416, 672 A.2d 921 (1996).[6]

Subsection (b) of § 4003, however, is broader than both the statute and subsection (a) and establishes a procedure by which an appeal from a conditional nolo contendere plea may be taken from "the adverse determination of *any motion* made prior to the close of evidence . . . ." (Emphasis added.) Before a defendant may appeal from the denial of a motion under § 4003 (b), however, he must satisfy a series of requirements. The conditions precedent to appellate review are: (1)

---

[5] This court's jurisdiction to review appeals of convictions based on nolo contendere pleas arises out of General Statutes § 54-95.

[6] *Piorkowski* was decided after this court heard oral argument on the present case.

the defendant must reserve "in writing the right, on appeal from the judgment, to review of the adverse determination"; Practice Book § 4003 (b); (2) court approval of entering the plea after a hearing to consider the state's objections, (3) a determination by the trial court that an adverse ruling would have a significant impact on the disposition of the case, (4) there must be an adequate record for review, and (5) the defendant must specify the motion, the denial of which the defendant is reserving the right to appeal. Practice Book § 4003 (b); *State* v. *Piorkowski,* supra, 236 Conn. 418.

In the present case, the defendant neither sought nor received the trial court's approval to condition his nolo plea on the right to appeal those issues not within the scope of § 54-94a or § 4003 (a). The mandated hearing was not held and the record does not indicate that the trial court determined the significant impact or adequate record requirements of the rule. Furthermore, the written plea of nolo contendere failed to specify the motion on which the defendant conditioned his right to appeal. It is readily apparent that the defendant has failed to satisfy any of the prerequisites to appeal under § 4003 (b).

The defendant relies on *State* v. *Ballantyne,* 17 Conn. App. 209, 211, 551 A.2d 770 (1988), to support his position that he should be allowed to appeal under § 4003 despite his failure to comply with its provisions. In *Ballantyne,* this court excused the trial court's failure to make an explicit finding on the record of the impact of the nolo contendere plea as required by § 4003 (b). Because the trial court that took the plea in *Ballantyne,* however, also presided over the suppression motion, *Ballantyne* held that the court had acquired sufficient knowledge of the case so that "[i]mplicit in the [trial] court's decision to accept the plea was the determination that the defendant's motion to suppress would have a significant impact on the outcome of the case." Id.,

212. Our Supreme Court has similarly approved of implicit determinations of the conditions of § 4003 (b). *State* v. *Piorkowski,* supra, 236 Conn. 420.

Unlike the *Ballantyne* and *Piorkowski* courts, we are not able to conclude that the trial court in the present case implicitly made the determinations required by § 4003 (b). Here, the trial court that accepted the defendant's nolo contendere plea did not preside over the suppression hearing and had no independent knowledge of the case. We cannot conclude that the trial court accepting the plea had reason to believe, on the basis of the printed plea form before it, that the defendant would seek appellate review of issues falling outside the ambit of § 54-94a or § 4003 (a).

In summary, because these nonvoluntariness claims are not claims that can be reviewed pursuant to either § 54-94a or § 4003 (a) and because the defendant did not satisfy the predicate requirements of § 4003 (b), his plea waived his right to appeal the denial of his motion to suppress on any ground other than the involuntariness of his statements.

### C

Despite the defendant's failure to qualify his claims under either the statute or the rule of practice, we also consider whether we may appropriately review his claims other than involuntariness under our general supervisory powers. Practice Book § 4183.[7] We are mindful of the need to conserve judicial time and resources; see *State* v. *Chung,* 202 Conn. 39, 45, 519 A.2d 1175 (1987); and in appropriate circumstances we will exercise our powers of supervision and control over proceedings on appeal in the spirit of the purpose of our rules, namely to facilitate business and advance

---

[7] Practice Book § 4183 provides in pertinent part: "The supervision and control of the proceedings on appeal shall be in the court having appellate jurisdiction from the time the appeal is filed, or earlier, if appropriate . . . ."

justice. *O'Bymachow* v. *O'Bymachow*, 10 Conn. App. 76, 78, 521 A.2d 599 (1987). We will not, however, exercise those powers to allow litigants to circumvent rules of practice. See *North Park Mortgage Services, Inc.* v. *Pinette*, 27 Conn. App. 628, 633, 608 A.2d 714 (1992).

The state's position is not merely a hypertechnical argument designed to obstruct the defendant's appeal without any concomitant benefit to the state. The state did not become aware of the defendant's intention to raise issues other than those delineated in § 54-94a until after the appeal was taken. The state did not have the opportunity to object to the plea or to argue the impact of the plea on the disposition of the case. The state was also deprived of the opportunity to be heard by the trial court on the adequacy of the record for appellate review.

Our Supreme Court has recognized the problems inherent in denying the state the opportunity to be heard with regard to § 54-94a: "[T]he [trial] court is not in a position to evaluate adequately such prosecutorial concerns as the significance of a particular ruling to the ultimate disposition of a case or the problems entailed by delaying a trial for the period necessary to obtain appellate review. The prosecutor is ordinarily much more familiar with the evidence to be presented that may not be affected by the ruling and also with the effect of delay incident to an appeal upon the availability of witnesses. Even where the prosecutor looks favorably on the conditional plea . . . the parties, as well as the trial court, must be sure that the issues reserved can properly be reviewed on the record available." *State* v. *Madera*, supra, 198 Conn. 101–102.

Accordingly, we decline to exercise our supervisory powers to review claims that the defendant did not properly raise under § 4003 (b).

## II

The defendant next claims that the trial court improperly found that he orally confessed to the Grincunas burglary and also improperly found that his oral confession was preceded by a valid *Miranda* waiver.

### A

Whether the defendant orally confessed to the Grincunas burglary is an issue of fact. Fact-finding, including resolving questions of credibility of witnesses, is a function of the trial court. *Drabik* v. *East Lyme*, 234 Conn. 390, 394–95, 662 A.2d 118 (1995). This court will not disturb those findings unless they are clearly erroneous. Id., 394.

Henderson testified that the defendant orally acknowledged his participation in the burglary before his statement was reduced to writing. Upon finding Henderson's testimony to be credible, the trial court found that the defendant orally implicated himself in the Grincunas burglary before his statement was transcribed. Accordingly, we conclude that the trial court's finding was supported by the evidence and was not clearly erroneous.

### B

We next address whether the trial court properly found that the defendant's oral confession to his participation in the Grincunas burglary was preceded by a valid *Miranda* waiver.

The purpose of *Miranda* warnings is to assure that a confession is the product of an "essentially free and unconstrained choice by its maker." (Internal quotation marks omitted.) *State* v. *Madera*, 210 Conn. 22, 48, 554 A.2d 263 (1989). In accordance with the well established test of *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), a defendant must intention-

ally relinquish or abandon his *Miranda* rights in order for a waiver of those rights to be valid. The state bears the burden of proving, by a preponderance of the evidence, that the defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *State* v. *Stanley*, 223 Conn. 674, 686, 613 A.2d 788 (1992).

When considering the validity of a claimed waiver, we examine the totality of the circumstances surrounding it. *State* v. *Madera,* supra, 210 Conn. 49. Factors used to assess the totality of the circumstances include the age of the accused, the extent of his education, evidence concerning advisement of constitutional rights and the length and nature of the interrogation. *State* v. *Toste*, 198 Conn. 573, 584, 504 A.2d 1036 (1986). Although we usually defer to findings made by the trier of fact, such deference is qualified in questions of this nature by the need to examine the record scrupulously to ascertain whether the factual findings were supported by substantial evidence. *State* v. *Stanley*, supra, 223 Conn. 686.

In claiming that the record is insufficient to support a conclusion that the state sustained its burden of demonstrating waiver, the defendant relies on *State* v. *Wilson*, 183 Conn. 280, 439 A.2d 330 (1981). In *Wilson*, the record was devoid of any evidence that the defendant expressly waived his *Miranda* rights. Id., 287. In this case, however, the record contains direct testimony that the defendant expressly agreed to make an oral statement after he waived his rights. The record also contains nontestimonial evidence, including the signed waiver cards, that indicate an express waiver. Because direct evidence was presented in support of the express waiver, the defendant's reliance on *Wilson* is misplaced.

The record reveals that the defendant is literate, had completed the tenth grade, and was familiar with the *Miranda* warnings from previous experiences with the

legal system. Additionally, the defendant was advised of his *Miranda* rights three times before giving the oral statement in question. He was advised of his rights and executed an express written waiver during the preparation of his first written statement inculpating himself in the two unrelated burglaries. The defendant testified that before giving each of his written statements, he had read the rights printed on the *Miranda* card, read the card aloud to Henderson, understood the rights, and signed the card waiving those rights. After being confronted with his codefendant's account of the Grincunas burglary and after being advised of his rights for a fourth time, the defendant orally confessed to his participation in the burglary.

On the basis of on our thorough examination of the record, we conclude that there was substantial evidence to support the trial court's finding that the defendant validly waived his constitutional protections of silence and legal counsel before orally confessing to the Grincunas burglary.

## III

In addition to claiming that his oral statement was not supported by a valid *Miranda* waiver, the defendant also claims that the trial court should have suppressed his oral statements because they were made involuntarily. Irrespective of *Miranda*, due process of law prohibits the state from using an involuntary confession at trial. *Brown* v. *Allen*, 344 U.S. 443, 475, 73 S. Ct. 397, 97 L. Ed. 469 (1953). The state has the burden of proving the voluntariness of a confession by a preponderance of the evidence. *Colorado* v. *Connelly*, 479 U.S. 157, 168, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986); *State* v. *Smith*, 200 Conn. 465, 477, 512 A.2d 189 (1986). Unless that burden is met, a confession compelled by pressure from a police officer is inadmissible. *State* v. *Smith*, supra, 476. The question of voluntariness is one of fact

for determination by the trial court in the exercise of its discretion, subject to the constitutional standards of due process. *State* v. *Derrico*, 181 Conn. 151, 162–63, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980).

"Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado* v. *Connelly*, supra, 479 U.S. 167. If that predicate exists, we must ultimately determine whether the confession is the product of an essentially free and unconstrained choice by its maker, that is, whether the confessor's will has been overborne and his capacity for self-determination critically impaired, so that the use of the confession offends due process. *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 225–26, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973).

The crux of the defendant's argument is that the police brought him to the station for questioning in the Waterbury burglaries as a ruse to compel his confession to felony murder. The defendant has a tenth grade education, is literate and repeatedly claimed to understand the rights on the *Miranda* card. The defendant testified that he knew that police wanted to question him about some burglaries *in addition to* the Grincunas homicide. In an exercise of caution, the police advised the defendant of his *Miranda* rights before each separate interrogation. The defendant himself asked to change an earlier statement once his codefendant confessed. Although the defendant was in custody for thirteen hours, there is nothing in the record to support a finding of coercive police activity.

Accordingly, we conclude that the record supports the trial court's finding that the state met its burden of proving that the confession was voluntary.

The judgment is affirmed.

In this opinion LANDAU, J., concurred.

SHEA, J., concurring. I agree with the majority opinion in so far as it rejects the defendant's claim that his oral confession to the police should have been suppressed because the evidence does not support the finding of the trial court that he confessed voluntarily after validly waiving his constitutional rights in accordance with the procedure prescribed by *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). I disagree, however, with the position taken in part I C of the opinion, that the supervisory authority of the court should not be exercised in this case to consider the remaining ground on which the defendant relies for excluding his confession.

That ground is the claimed failure of the police to present the defendant promptly for arraignment, as required by General Statutes (Rev. to 1991) § 54-1g,[1] after he had confessed to two unrelated burglaries and had been effectively placed in police custody on the basis of those confessions. The defendant maintains that, instead of arraigning him promptly in accordance with the statute, the police held him for several hours so that they could complete their investigation of the murder in which he ultimately implicated himself by confessing to the burglary that is the basis for his conviction of felony murder.

I

In *State* v. *Chung*, 202 Conn. 39, 43–45, 519 A.2d 1175 (1987), the Supreme Court exercised its inherent

[1] General Statutes (Rev. to 1991) § 54-1g provides: "Time of arraignment. Any arrested person who is not released sooner or who is charged with a family violence crime as defined in section 46b-38a shall be promptly presented before the superior court sitting next regularly for the geographical area where the offense is alleged to have been committed. If an arrested

supervisory authority over the administration of justice in order to review a claim that a confession was involuntary prior to the 1988 amendment of General Statutes § 54-94a, permitting such a claim to be raised after denial of a motion to suppress a confession on the ground of involuntariness. See Public Acts 1988, No. 88-19. "[T]o force [a] defendant to go through an entire trial to preserve the right to appeal the pretrial ruling, under the facts of this case, would be a waste of judicial time and resources." *State* v. *Chung,* supra, 45. The court went on to review the claim of involuntariness, despite the limited scope of the statute at that time, even though the defendant at the suppression hearing had claimed only an invalid waiver of his *Miranda* rights. Id., 46–47.

Similarly, this court, following the view of *Chung* that strict adherence to procedural statutes and rules of practice must give way to the overriding necessity of administering justice in a fair and efficient manner, should invoke its supervisory authority to review the defendant's remaining ground for excluding his confession rather than to leave pending a claim likely to resurface in a future habeas corpus proceeding. It may be well to call the attention of the bar to the not infrequent failure to conform to the procedures prescribed by § 54-94a and Practice Book § 4003, but we should not impose the burden of piecemeal litigation on the judicial system when it can be avoided simply by exercising our supervisory authority to address the merits of the defendant's claim that his confession resulted from his detention by the police in violation of § 54-1g. Practice Book § 6 provides: "The design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a

person is hospitalized, or has escaped or is otherwise incapacitated, the person shall be presented, if practicable, to the first regular sitting after return to police custody."

strict adherence to them will work surprise or injustice."

The concern of the majority that we should not exercise our supervisory powers "to allow litigants to circumvent rules of practice" would leave few occasions for resort to those powers. When the rules have been followed, there is seldom any need for us to exercise those supervisory powers. Usually, it is when attorneys or trial courts have bungled by failing to comply with some procedural requirement that an appellate court will exercise its authority to disregard the nonconformity so that the judicial system may function fairly and efficiently in a particular case.

Contrary to the view of the majority, the state had sufficient opportunity "to object to the plea" and "to argue the impact of the plea on the disposition of the case." Nothing in the record suggests that the defendant entered his nolo contendere plea ex parte. If, during the plea proceeding, the state had voiced the objections now raised on appeal, the trial court undoubtedly would have insisted on compliance with § 4003 (b) before accepting the plea. In any event, the state could hardly have argued that the defendant's plea would not have had a "significant impact on the disposition of the case in the trial court"; Practice Book § 4003 (b); because the admissibility of the confessions was the critical issue in the case. The state has not indicated the nature of the argument it might have advanced in the trial court concerning significant impact.

The state similarly had an opportunity to object to the sufficiency of the record for appellate review. In this appeal, no claim has been raised that the record is inadequate for review of any of the defendant's claims. This court implicitly has found the record sufficient for review of the issues of voluntariness and *Miranda* compliance by resolving those issues on

appeal. The same record, consisting of the transcript of the hearing on the motion to suppress at which those issues together with the issue of untimely arraignment were considered, is equally sufficient for review of the defendant's remaining claim involving the latter issue.

## II

Section 54-1g provides in part that "[a]ny arrested person who is not released sooner . . . shall be promptly presented before the superior court sitting next regularly for the geographical area where the offense is alleged to have been committed. . . ." A related statute, General Statutes § 54-1c, renders inadmissible "[a]ny admission, confession or statement, written or oral, obtained from an accused person who has not been presented . . . on the day specified for arraignment under the provisions of section 54-1g . . . ." In a comprehensive memorandum of decision, the trial court that ruled on the motion to suppress found that the defendant was taken into police custody at 6:40 a.m. on January 15, 1993, after confessing to two burglaries in the neighborhood where the murder victim had lived. The interrogation preceding this confession had begun at 1:45 a.m. The defendant claims that he should have been arrested for the unrelated burglaries promptly after his confession and presented for arraignment at the session of the Superior Court in Waterbury that began at 10 a.m. that day. He contends that the police held him at the police station for the purpose of obtaining a confession from him with respect to the crime of felony murder, to which he confessed some time after 3 p.m. He was formally arrested on a warrant issued some time after 4 p.m. on Friday, January 15, 1993, but was not arraigned until the following Tuesday because of the intervening weekend and a legal holiday.

The provision of § 54-1g requiring an arrested person held in custody to be "promptly presented before the

superior court sitting next regularly" has been construed by this court to refer to the "next regularly scheduled court date." *State* v. *Hardy*, 11 Conn. App. 238, 239, 526 A.2d 562 (1987). In *State* v. *Vollhardt*, 157 Conn. 25, 39, 244 A.2d 601 (1968), our Supreme Court had construed the phrase "session next held" of the statutory predecessor of § 54-1g to mean the session held on "the day following [the] arrest" of a defendant. The *Vollhardt* court relied on *State* v. *Darwin*, 155 Conn. 124, 134, 230 A.2d 573 (1967), rev'd on other grounds, 391 U.S. 346, 88 S. Ct. 1488, 20 L. Ed. 2d 630 (1968), in which the court had held that the term " 'next session' . . . referred to the regular session . . . next to be held, excluding any session on the day on which the arrest was made." See *State* v. *Piorkowski*, 236 Conn. 388, 395 n.10, 672 A.2d 921 (1996).

In *Darwin*, the arrest had been made at 9:40 a.m., twenty minutes before the session of the arraignment court began. The defendant attempts to distinguish *Darwin* and its progeny from this case on the ground that there was ample time, two hours and twenty minutes, between his arrest at 6:40 a.m. and the opening of the Superior Court in Waterbury at 9 a.m. for the police to have presented him for arraignment at that session. Despite this fact, however, I conclude that the police as well as the trial court were entitled to rely on the long-standing construction of the term "next session" adopted in *Darwin*, "excluding any session on the day on which the arrest was made." *State* v. *Darwin*, supra, 155 Conn. 134.

Accordingly, I concur in the judgment.