STATE OF CONNECTICUT *v.* WILLIE WILLIAMS, JR.
(9627)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA, and GRILLO, Js.

Argued December 9, 1982—decision released May 10, 1983

*Margaret Hayman,* assistant public defender, for the appellant (defendant).

*Thomas V. O'Keefe, Jr.,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Julia D. Dewey,* assistant state's attorney, for the appellee (state).

SPEZIALE, C. J. The defendant, Willie Williams, Jr., was convicted by a jury of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), sexual assault in the first degree in violation of General Statutes § 53a-70 (a), unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a), and larceny in the third degree in violation of General Statutes § 53a-119 and § 53a-124 (a) (1). On appeal, the defendant claims that the trial court erred (1) in admitting certain testimony at trial; and (2) in admitting certain statements made by the defendant to the police while he was in custody.

The jury could have reasonably found the following facts: The victim, a young woman, arrived in New Haven approximately three days before the incident to work as an assistant production manager on a documentary being filmed in that city. Upon arrival, she obtained accommodations at a hotel there. On the evening of September 13, 1978, the victim went to sleep sometime after 11 p.m. She had locked the door to her room, but had not fastened the chain lock. The victim was awakened at approximately 1 a.m. and discovered that the defendant was standing in her room.

The defendant stated that he wanted to call a taxicab, rambled incoherently, indicated that he wanted to have sex, and threatened to kill her if she screamed. For a period of several hours she managed to resist the defendant's advances despite his verbal and physical abuse, but eventually she was sexually assaulted. After being sexually assaulted, she was able to escape to the bathroom, where she remained until

the defendant left her room. At approximately 7 a.m., after taking a bath, the victim reported the sexual assault to a business colleague staying in the hotel and called the police. The victim later discovered that her driver's license and approximately $250 were missing.

Before he left her hotel room, the defendant had told the victim that he would return the next night and that if she notified the police, he would claim that she had consented to having intercourse. The victim identified the defendant in the hotel bar the following evening, at which time he was arrested. The driver's license and room key of the victim were found in the defendant's possession.

The defendant testified at trial. He claimed that he had met the victim in the hotel elevator and was invited to her room. He further testified that the sexual relations between himself and the victim were consensual and initiated by her. According to the defendant's testimony, the victim voluntarily gave him her driver's license and a room key before he left, so that he could meet her at the hotel the following evening. He denied taking any money from the victim.

## I

### ADMISSION OF NEIGHBOR'S TESTIMONY

At trial, over objection and exception by the defendant, the trial court permitted the state to introduce the testimony of a neighbor of the defendant who stated that in July of 1978 the defendant had gained entry to her apartment at approximately 3 a.m. by telling her that there was an emergency and that he needed to use her phone. She testified that although the defendant appeared to dial the phone, he merely mumbled numbers into the receiver. The neighbor stated that she became nervous and that when she heard a car horn

outside, she told the defendant that her mother had arrived to pick her up. The defendant then asked what he could do to repay her, to which the neighbor replied that repayment was not necessary. As the defendant was walking out the door he said, "I was going to rape you."[1] The defendant claims error in the admission of this testimony, both because it was not relevant to any issue before the jury and because its prejudicial effect far outweighed any minimal probative value it might have had.

Upon conclusion of the neighbor's testimony, the trial judge gave immediate instructions limiting the testimony to certain issues in the case and admonishing the jury not to consider the testimony as evidence of bad character or propensity to commit crimes. In the court's final charge to the jury, the court summarized the neighbor's narrative, expanded upon its earlier instruction concerning the limited purpose of the testimony, but misquoted the defendant's alleged parting remark, "I was going to rape you," by changing it to "I am going to rape you."

"Evidence of other misconduct, although not ordinarily admissible to prove the bad character or criminal tendencies of the accused, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity. *State* v. *Falby*, 187 Conn. 6, 23, 444 A.2d 213

---

[1] The judge first held a suppression hearing concerning the admissibility of the neighbor's testimony. Defense counsel argued for the exclusion of the testimony on the grounds that it was "other crimes" evidence which was totally irrelevant to the charge at hand, that it was not similar to the charged crime, and that its extreme prejudice to the defendant outweighed any probative value. Over defense counsel's objection, the judge ruled the neighbor's testimony admissible based on the prosecutor's theory that it constituted a similar act, or was probative of a common scheme or modus operandi, and that the probative value outweighed any prejudice to the defendant from its admission. The defendant excepted. The neighbor then repeated her account to the jury.

(1982); *State* v. *Barlow,* 177 Conn. 391, 393, 418 A.2d 46 (1979). . . . Where such evidence is offered in proof of an issue in the case, and not merely to show an evil disposition on the part of the accused, the trial court must still consider whether its prejudicial tendency outweighs its probative value before ruling upon its admissibility. *State* v. *Holliday,* 159 Conn. 169, 173, 268 A.2d 368 (1970)." *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982).

In this case, the state offered the neighbor's testimony on the issue of consent. In view of the defendant's testimony acknowledging his presence in the victim's room and the occurrence of sexual relations, the main issue before the jury concerned whether the victim consented or the defendant used force or the threat of force to compel sexual intercourse. See General Statutes § 53a-70 (a). The testimony in question was offered in proof of an issue in the case.

Once such evidence is offered, it is the responsibility of the trial court to balance the probative value of the evidence against its prejudicial tendency to determine its admissibility. Our review of the trial court's ruling "is limited to whether this ruling exceeded the latitude accorded to the exercise of judicial discretion. *State* v. *Falby,* supra; *State* v. *Barlow,* supra, 394; *State* v. *Brown,* 169 Conn. 692, 702, 364 A.2d 186 (1975)." *State* v. *Ibraimov,* supra.

In the present case, the two incidents were very dissimilar. The first involved an individual who lived in the same building as the defendant and who knew the defendant, while the incident for which the defendant was on trial involved a stranger in a hotel room. In the first incident, the defendant gained access by claiming an emergency; in the second, the defendant broke into the victim's room. Moreover, no actual crime

was involved in the first incident. At most, the first incident represented an act of misconduct on the part of the defendant which may have indicated a propensity to commit sexual assault. It is precisely this type of evidence which may permit the jury to draw the erroneous and prejudicial inference which the rule is meant to avoid. Thus, the probative value of the neighbor's testimony was minimal, at best, while its prejudicial tendency was much more substantial. See *State* v. *Carter,* 189 Conn. 631, 458 A.2d 379 (1983). We conclude, therefore, that the prejudicial effect of the neighbor's testimony outweighed its minimal probative value and that its admission into evidence constituted an abuse of the trial court's discretion.

The admission of the neighbor's testimony constituted reversible error. This court has consistently indicated that " ' "[a]ny improper evidence that may have a tendency to excite the passions, awaken the sympathy, or influence the judgment, of the jury, cannot be considered as harmless." ' *State* v. *Loughlin,* 149 Conn. 21, 26, 175 A.2d 367 [1961]; see *State* v. *Acklin,* [171 Conn. 105, 115–16, 368 A.2d 212 (1976)]; *State* v. *Ferraro,* [160 Conn. 42, 45, 273 A.2d 694 (1970)]." *State* v. *Onofrio,* 179 Conn. 23, 32–33, 425 A.2d 560 (1979). Because the trial court abused its discretion by admitting the testimony of the neighbor and because that error cannot be considered harmless, a new trial must be ordered.

## II

### Admissibility of Statement Made During Custodial Interrogation

Although our resolution of the defendant's first claim of error is dispositive of this appeal, we consider his second claim of error because it is likely to arise upon retrial. The defendant's second claim of error is that,

after conducting a suppression hearing in the absence of the jury, the court's admission of his statement to the effect that the victim was from out of town and would never come back to testify, as made to a police officer during custodial interrogation, violated his right against self-incrimination as guaranteed by both the United States constitution and the Connecticut constitution.[2]

After his arrest on the evening of September 14, 1978, the defendant was taken to the hotel's office where he was given both oral and written *Miranda* warnings before being questioned. The defendant then gave a statement similar to his trial testimony. The police thereafter took the defendant to the police station. Following written *Miranda* warnings, the defendant signed a rights acknowledgment form and gave a second statement to the police, which was later transcribed and signed by the defendant, describing his alleged meeting with the victim in greater detail and reiterating his claim that he had not forced her to have sexual intercourse.

At issue before us is a third statement made by the defendant during police interrogation conducted by Officer DiLullo on the following morning. At the suppression hearing, DiLullo indicated that he knew that the defendant had been in custody since the night before and that he had spent the night in jail. DiLullo also knew that the defendant had given a statement the preceding evening, and that the defendant did not have an attorney at that time, but that he would be brought to court at 10 a.m. and would then have an attorney appointed. DiLullo took the defendant to an interview room at approximately 8 a.m. No one else was present.

---

[2] Because of our resolution of this claim of error, it is unnecessary for us to consider the defendant's further claim that the admission of this statement violated his right to counsel.

DiLullo read the *Miranda* warnings to the defendant from a warning card and asked the defendant if he understood them. The defendant replied, "Uh-huh." The officer then asked the defendant if he knew what charges he faced and the defendant responded that he did. DiLullo immediately began questioning him about the incident. The defendant did not respond to the questions, but remained silent. The officer continued to question the defendant for approximately eight minutes. DiLullo testified that the defendant did not want to talk about the incident, but that toward the end of the eight minute period the defendant non-responsively blurted out that he had been arrested for rape before, but that he had "beat the case." Seconds later the defendant added that the victim was from out of town and would never come back to testify. After those statements were made, the officer ceased his questioning and returned the defendant to the lockup.

At the conclusion of the suppression hearing, defense counsel argued that the defendant's statements of September 15 should be suppressed because the defendant had not waived his rights to counsel and to remain silent. The state countered with the argument that the defendant had been warned of his rights again that morning, that he understood those rights, and that he eventually did make two statements. Therefore, according to the state's theory, there was sufficient evidence to support a finding of a knowing and voluntary waiver.

The trial court granted defense counsel's motion to suppress the defendant's statement regarding the prior rape arrest on other grounds, but denied the motion to suppress with respect to the defendant's statement that the woman was from out of town and would not testify. Defense counsel took exception to the ruling before DiLullo repeated his testimony to the jury.

Although in *North Carolina* v. *Butler,* 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979), the United States Supreme Court held that a waiver of *Miranda* rights need not be express but may be inferred from the course of conduct of the person being interrogated, the court reiterated the *Miranda* caveat that mere silence is not enough. "The courts must presume that a defendant did not waive his rights; the prosecution's burden is great . . . ." Id., 373. Where, as in this case, "the record discloses no verbal utterance by the defendant that he wanted either to rely on his rights or to waive them," this court has held that "before a conclusion of waiver can be supported, the state must demonstrate: (1) that the defendant *understood* his rights, and (2) that the defendant's *course of conduct* indicated that he did, in fact, waive those rights. *North Carolina* v. *Butler,* supra, 373." (Emphasis in original.) *State* v. *Wilson,* 183 Conn. 280, 284–85, 439 A.2d 330 (1981); see *State* v. *Harris,* 188 Conn. 574, 579–80, 452 A.2d 634 (1982). In *Wilson,* the court noted that the actual speaking of inculpatory remarks by the defendant was not sufficient to allow a presumption of waiver. Id., 286.

In the case before us the defendant does not contend that he failed to understand his rights on the morning of September 15, but claims that he did not waive those rights during the interrogation on September 15. We agree that nothing in the defendant's course of conduct indicated that he *waived* his rights during the interrogation on the morning of September 15.

DiLullo testified during the suppression hearing that the defendant's conduct indicated to him that he did not want to talk. On direct examination the officer said: "He didn't want to talk about this incident. He didn't want to say anything." In addition, when defense counsel asked the officer whether he "interpret[ed] Mr.

Williams' mere sitting there, his silence as meaning that he wanted to talk with [him]," DiLullo responded in the negative. Nevertheless, the officer persisted in interrogating the defendant for approximately eight minutes. The statements which the defendant eventually did make were not responsive to any of DiLullo's questions. The fact that the defendant on two previous occasions the day before had willingly made detailed statements to the police in response to their questions stands in sharp contrast to the defendant's eight minute silence on September 15. This change in behavior should have, and apparently did, alert DiLullo to the fact that the defendant did not want to talk further about the incident.

The officer did not, prior to the commencement of the September 15 interrogation, ask the defendant if he wanted to waive his constitutional rights. Nor did DiLullo have the defendant initial the warning card or sign a waiver of rights form as the defendant had done before making his statements to the police on September 14. The officer only read the *Miranda* rights from the warning card and asked if the defendant understood them. As to the statements made to DiLullo, "[t]here is not one iota of evidence in this record that can be used to show that the defendant did or said anything to indicate that he waived his constitutional rights." *State* v. *Wilson,* supra, 287.

We conclude, therefore, that the evidence was not sufficient to support the trial court's finding that the defendant had waived his right to remain silent. The trial court erred in admitting into evidence the defendant's statement that the victim was from out of town and would not return to testify.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.