STATE OF CONNECTICUT *v.* ROBERT RUSSO, JR.
(2693)

DUPONT, C.P.J., HULL and SPALLONE, Js.

Argued November 11, 1984—decision released January 8, 1985

*John J. Keefe, Jr.,* with whom, on the brief, was *Hugh F. Keefe,* for the appellant (defendant).

*Steven M. Sellers,* deputy assistant state's attorney, with whom, on the brief, were *John M. Massameno* and *Jane Brandfon,* assistant state's attorneys, for the appellee (state).

HULL, J. The defendant, Robert Russo, Jr., appeals[1] from his conviction, after a jury trial, of one count of misconduct with a motor vehicle pursuant to General Statutes § 53a-57.[2] Russo claims error in two rulings of the trial court in which it refused to exclude certain evidence at the trial. First, he claims that the admission of a hospital report containing incriminating evidence violated his right of confrontation provided by the sixth amendment to the United States constitution, and, second, that the testimony of a police officer as to statements made by Russo violated his right to remain silent provided by the fifth amendment to the United States constitution. The court admitted both items of evidence over the defendant's objection. We find no error.

There was testimony from which the court, in making its two evidentiary rulings,[3] could have found the following: At approximately 12:45 a.m. on March 30, 1980, the defendant was involved in an automobile accident on Middletown Avenue in New Haven. The defendant was driving a Cadillac northbound when he collided with a Camaro which was traveling southbound. It had been raining on and off throughout the night and, at times, the rain was heavy.

The owner of the Camaro, Judy Burke, was a passenger in the car and received relatively minor injuries. The driver was a friend of Burke's named Shelley Glick. She died as a result of the accident.

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. General Statutes § 51-199 (c).

[2] General Statutes (Rev. to 1979) § 53a-57 (a) provides: "A person is guilty of misconduct with a motor vehicle when, with criminal negligence in the operation of a motor vehicle or in consequence of his intoxication while operating a motor vehicle, he causes the death of another person."

[3] The defendant's brief does not comply with Practice Book § 3060F for a number of reasons, not the least of which is that it fails to set out the substance of the court's rulings. Nonetheless, both parties treat the rulings as if they were properly before us and so we treat them accordingly.

Emergency apparatus and personnel arrived in a matter of minutes. Glick was pronounced dead at the scene by a doctor. Although Burke was thrown through the windshield, she was not seriously injured. Thus, the defendant became the focus of the attention of the emergency personnel. A firefighter, an emergency medical technician, an advanced life support technician and a police officer, all of whom came into close contact with the defendant at the scene, were of the opinion that he was intoxicated. Three of these people smelled alcohol on the defendant's breath or in the Cadillac or both. All of them believed that the defendant's behavior suggested that he had been drinking.

Although the defendant appeared to be intoxicated at the scene of the accident, he was at all times conscious. He was groggy, but had no difficulty conversing with those attending him. His eyes were open and the technicians at the scene observed only superficial bleeding on his face and scalp. None of his injuries was ever life threatening.

When first approached by emergency personnel, the defendant was abusive and told them not to touch him because he was "all right." He eventually agreed to treatment and answered questions asked of him. At one point he told a nurse at the scene that he felt "O.K." A firefighter noticed cans in the Cadillac, but did not know what kind of cans they were. Upon being extricated from his car, the defendant was fitted with a cervical collar and was strapped to a spinal board. He was then transported to the Yale-New Haven Hospital.

The defendant had last been seen at about 6:30 p.m., March 29, at the Rose Garden, a bar and restaurant located in Hamden, Connecticut. The bartender had refused to serve the defendant because "he looked as if he should not be served a drink. . . . [H]e didn't look right." Having been refused, the defendant left in a large car, possibly a Cadillac.

After the defendant had been taken to the hospital, Sergeant Michael Sweeney, a New Haven police officer, examined the interior of the Cadillac with his flashlight and saw a half-empty bottle on the front passenger seat. It appeared to be a liquor bottle about the size of a "fifth." It had a label on its side and had a broken seal on its cap.

Sweeney then proceeded to the hospital where, at approximately 2 a.m., he interviewed the defendant in a hospital treatment room. Sweeney, who was in uniform, identified himself to the defendant as a police officer and then read to the defendant all of the warnings required by *Miranda* v. *Arizona,* 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). After each right was read, the defendant was asked by Sweeney whether he understood that right. The defendant told Sweeney that he understood each right.

Although the defendant appeared to Sweeney to be intoxicated, he was conscious at all times, was talkative and kept trying to sit up on the hospital bed. The defendant was somewhat confused about time and Sweeney observed injuries to his teeth and tongue. He did speak to Sweeney, who was of the opinion that Russo understood what was being said to him. Sweeney questioned the defendant for approximately twenty-five minutes, whereupon he left the hospital.

Sweeney later returned and he and another police officer arrested the defendant. After executing a written promise to appear, Russo was discharged from the hospital at about 8:30 a.m. on March 30, or about seven hours after he had been admitted, and was taken home by his father.

I

The defendant's first claim of error relates to the trial court's admission of one page of a hospital report made in the emergency room of the Yale-New Haven Hospi-

tal after Russo arrived there. The doctor who had made the report was originally expected to testify for the state. On the third day of trial, however, the state's attorney announced that the doctor, who was in Providence, Rhode Island, would be unable to attend the trial until the following week. The hospital report[4] was admitted into evidence pursuant to General Statutes § 4-104,[5] without an authenticating witness. While the defendant does not contest the admission of the report as an exception to the hearsay rule, he does argue that, in this case, his sixth amendment right to confront the witness against him was effectively denied by its admission.

The state responds that the trial court's implied finding, that the defendant's right of confrontation was not violated, is not clearly erroneous. We agree.

In *State* v. *Cosgrove,* 181 Conn. 562, 436 A.2d 33 (1980), the court stated that "[a]s the Supreme Court has noted, its holding in *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 [1965], that 'the Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right . . . made obligatory on the States by the Fourteenth Amendment' forms merely the beginning of an inquiry into whether an extrajudicial statement introduced at a state criminal trial violates the confrontation clause. *Dutton* v. *Evans,* 400 U.S. 74, 79, 91 S. Ct. 210, 27 L. Ed. 2d 213 [1970] . . . ." *State* v. *Cosgrove,* supra, 570–71. The court noted that the Supreme Court "has been careful to establish that the constitutional right of confrontation does not require that hearsay evidence

---

[4] The report involved is the front page of a two page Emergency Service Visit Record signed by a Doctor Kollmen which states, in part, under "History/Exam/Treatment": "Says he has been drinking and taking Quaaludes (driver)."

[5] General Statutes § 4-104 provides a narrow exception to the hearsay rule for hospital records made in the ordinary course of business. There is no dispute as to the state's compliance with this provision.

can at no time be admitted. E.g., *Parker* v. *Randolph,* 442 U.S. 62, 73, 99 S. Ct. 2132, 60 L. Ed. 2d 713 [1979] (plurality opinion); *Dutton* v. *Evans,* supra, 80; *Pointer* v. *Texas,* supra, 407. On the other hand, neither is a particular declaration to be determined not violative of the right of confrontation of a criminal defendant solely because state law provides for its admission as an exception to its evidentiary rules governing hearsay. E.g., *California* v. *Green,* 399 U.S. 149, 155–56, 90 S. Ct. 1930, 26 L. Ed. 2d 489 [1970]." *State* v. *Cosgrove,* supra, 571.

The test for determining whether evidence such as the hospital report should be admitted without affording the defendant the right to confront its author is that there are "indicia of reliability" which minimize the possibility of harm in placing the evidence before the jury. *Dutton* v. *Evans,* supra, 89. We conclude that the evidence in question is highly reliable. The purpose of the report was to provide assistance in the diagnosis and treatment of the defendant as a patient. It was in both the doctor's and the defendant's interest that it be totally accurate. An examination of the report shows a medical summary of brief facts about the defendant himself, background pertinent to his treatment, results of a physical examination and medical recommendations about the course of treatment. Although the report was made in the hurried atmosphere of an emergency room setting, it was made by trained professionals accustomed to working in such an atmosphere and in drafting reports such as this under similar circumstances.

The court in *State* v. *Cosgrove,* supra, also noted a second aspect to this issue: "[It has been] suggested that the Supreme Court decisions in *Mancusi* v. *Stubbs,* 408 U.S. 204, 92 S. Ct. 2308, 33 L. Ed. 2d 293 [1972]; *Dutton* v. *Evans,* [supra]; *Barber* v. *Page,* 390 U.S. 719, 88 S. Ct. 1318, 20 L. Ed. 2d 255 [1968]; and *Pointer*

v. *Texas,* [supra], lead to the conclusion that the government bears the burden of producing extrajudicial declarants, or of demonstrating their genuine unavailability whenever the extrajudicial statements being offered at trial are crucial to the government's case or devastating. *United States* v. *Oates,* [560 F.2d 45, 83 (2d Cir. 1977)]." *State* v. *Cosgrove,* supra, 580. The court then left its decision on that issue for another day, concluding that the evidence there in question was "not crucial . . . nor [was] it devastating." Id., 581.

Assuming, arguendo, that demonstrating the declarant's unavailability is a prerequisite to the admission of the hospital report in this case, we conclude that the state made a good faith effort to produce the doctor as a witness and demonstrated his genuine unavailability as soon as it was discovered.[6]

We conclude that the trial court's decision to admit the hospital report was not clearly erroneous.

## II

The defendant's second claim of error is that the trial court erred in admitting into evidence Sweeney's testimony as to his conversation with Russo at the hospital.[7] This claim, in two parts, goes to the issue of whether the defendant voluntarily, understandingly and knowingly waived his constitutional right to remain silent. The first part concerns the general voluntari-

---

[6] It should also be noted that, although the defendant was not required to do so, he could have moved for a continuance of the trial until the following week when the state could produce its witness. Further, the defendant could have, pursuant to General Statutes § 54-82i (c), subpoenaed the witness himself rather than relying on the state to do so.

[7] This issue was first raised by the defendant's motion to suppress the statements in question. The trial court ordered that the motion be heard at the time of trial. The state does not contest that the defendant was in custody at the time in question. Officer Edward Woods testified that the defendant was in custody and was not able to leave if he was physically capable of doing so.

ness of the defendant's statement. The second part raises the question of whether, under *Miranda* v. *Arizona,* 384 U.S. 436, 479, 86 S. Ct. 1601, 16 L. Ed. 2d 671 (1966), and *State* v. *Harris,* 188 Conn. 574, 579–80, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983), the defendant voluntarily, knowingly and intelligently waived his right to remain silent.

The ultimate test of the admissibility of the defendant's statements is their voluntariness. *State* v. *Stankowski,* 184 Conn. 121, 131, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981). " 'The issue of whether a confession is voluntary and admissible is, in the first instance, one of fact for determination by the trial court in the exercise of its legal discretion. *State* v. *Devine,* 149 Conn. 640, 652, 183 A.2d 612 [cert. denied sub nom. *State* v. *Cooper,* 371 U.S. 930, 83 S. Ct. 303, 9 L. Ed. 2d 237] (1962). That discretion must, however, be exercised in accordance with constitutional standards of due process.' *State* v. *Derrico,* 181 Conn. 151, 163, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980)." (Citation omitted.) *State* v. *Stankowski,* supra, 131–32.

"The ultimate test remains . . . . 'Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.' "[8] *State* v. *Stankowski,* supra, 132, quoting

---

[8] The burden is on the state to prove, by a preponderance of the evidence, the voluntariness of the confession. *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *Stankowski,* 184 Conn. 121, 131, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981). Once the trial court concludes that the state has met that burden, our review is limited by our "clearly erroneous" standard. Practice Book § 3060D.

*Schneckloth* v. *Bustamonte,* 412 U.S. 218, 225, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); see *Townsend* v. *Sain,* 372 U.S. 293, 307, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963); *State* v. *Derrico,* supra, 163.

We must view the totality of the circumstances surrounding a confession in order to determine whether it was voluntary or was obtained by coercion or improper inducement. *Haynes* v. *Washington,* 373 U.S. 503, 513–14, 83 S. Ct. 1336, 10 L. Ed. 2d 513 (1963). The factual inquiry into voluntariness focuses primarily on the conduct of law enforcement officials. See *Mincey* v. *Arizona,* 437 U.S. 385, 399–400, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978).

In this case, the questioning of the defendant occurred in a hospital examining room, not in an interrogation room at police headquarters. The interview itself was only twenty-five minutes long. Evidence indicated that the defendant was not under intensive care. Rather, he received only intermittent treatment, which continued during his questioning. Further, the defendant's injuries were sufficiently minor to allow his release only seven hours after he was first admitted to the hospital. The defendant was not deprived of medical assistance as a result of the interview nor was he told that cooperation was a condition to receiving medical treatment. Under these circumstances, the defendant's statements were not, in any respect, coerced.

The only serious issue of voluntariness raised by the defendant is as to his intoxication and physical injury at the time of questioning. While the defendant was allegedly intoxicated at the time of his questioning at the hospital, he was not intoxicated to the point of incoherence, which his statements amply reflect. The defendant's injuries did not impair his ability to think to any significant extent. There was conflicting evidence as to whether the defendant was in pain from

his injuries. Further, the defendant was able to question whether he was required to submit to a blood test and, when advised of his rights, refused to allow such a test.

The effect of a defendant's claim that he was unable voluntarily to waive his rights because he had indulged in alcohol or drugs has been clearly stated in Connecticut: " '[T]he use of drugs or the ingestion of alcoholic beverages does not in and of itself render a subsequent admission inadmissible.' . . . It is one factor to be considered in determining the voluntariness of a statement." (Citations omitted.) *State* v. *Stankowski,* supra, 134. The evidence presented to the trial court, including evidence of the conduct of the police and of the defendant's mental and physical condition at the time of questioning, adequately supports the trial court's conclusion that the defendant's statements were voluntary. Those statements were the product of an essentially free and unconstrained choice by their maker. See id., 132.

The other aspect of the defendant's second claim is that he did not adequately understand and waive his *Miranda* rights. Although the defendant did state that he had heard his rights and that he understood them, he did not specifically state that he waived them.

Where "the record discloses no verbal utterance by the defendant that he wanted to rely on his rights or waive them," the Connecticut Supreme Court has held that "the state must demonstrate: (1) that the defendant *understood* his rights, and (2) that the defendant's *course of conduct* indicated that he did, in fact, waive those rights." (Emphasis in original.) *State* v. *Wilson,* 183 Conn. 280, 284–85, 439 A.2d 330 (1981); *State* v. *Williams,* 190 Conn. 104, 112, 459 A.2d 510 (1983); see *Tague* v. *Louisiana,* 444 U.S. 469, 470, 100 S. Ct. 652, 62 L. Ed. 2d 622 (1980). An appellate court must make

an independent judgment as to whether a valid waiver of constitutional rights has been made, based on the totality of the circumstances. *Beckwith* v. *United States,* 425 U.S. 341, 348, 96 S. Ct. 1612, 48 L. Ed. 2d 1 (1976); *United States* v. *Parr,* 716 F.2d 796, 817–18 (11th Cir. 1983). Deference of a reviewing court to the trial court's findings of fact is qualified, in this area, "by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence." *State* v. *Pellegrino,* 194 Conn. 279, 288–89, 480 A.2d 537 (1984); *State* v. *Harris,* supra, 580; *State* v. *Frazier,* 185 Conn. 211, 219, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982).

In this case, the defendant was twenty-six years old. He exhibited no intellectual impediments to his ability to understand the *Miranda* warnings. His interrogation was not lengthy, he was not held incommunicado, nor was there any violence or threat thereof incident to his arrest or questioning. See *State* v. *Harris,* supra, 581–82. The defendant was at all times conscious and talkative. His responses to Sweeney's queries were coherent and not merely monosyllabic. See *State* v. *Lavorgna,* 37 Conn. Sup. 767, 771, 437 A.2d 131 (1981). He stated specifically that he understood his rights. We also note that the same circumstances which lead us to conclude that the defendant's statements were voluntary also support the conclusion here that he understood his rights.

The state must also demonstrate that the defendant's course of conduct indicated that he did, in fact, waive his rights. *State* v. *Williams,* supra, 112. As noted above, the defendant declined to submit to a blood test after questioning his obligation to do so and asking Sweeney about his constitutional rights.

This evidence indicates that the defendant's course of conduct demonstrated a waiver of his *Miranda* rights. The defendant was aware that he did have certain rights with regard to the blood test. He asked Sweeney what those rights were and, once informed of his rights, refused the test. It is only logical to conclude that when he was told by Sweeney of his right to remain silent his subsequent conversation with Sweeney evidenced an intelligent, knowing and voluntary waiver of that right. Cf. *State* v. *Pellegrino,* supra, 289; *State* v. *Williams,* supra, 112–113. We conclude that the defendant, who was careful to preserve his rights as to the blood test, was equally careful in regard to his right to remain silent.

The defendant's actions present us with more than mere silence as to the waiver of his *Miranda* rights. See *State* v. *Pellegrino,* supra, 289; *State* v. *Williams,* supra, 112–13. We do not presume waiver because a confession was, in fact, obtained. *State* v. *Wilson,* supra, 286. Rather, this is a case where "waiver can be clearly inferred from the actions and words of the person interrogated." *North Carolina* v. *Butler,* 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979).

We, therefore, conclude that the trial court did not err in admitting the hospital report and Sweeney's testimony as it did.

There is no error.

In this opinion the other judges concurred.