558 A.2d 865

COMMONWEALTH of Pennsylvania, Appellee,

v.

Thomas L. KRAVONTKA, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 1, 1989.

Filed May 1, 1989.

Allen H. Smith, York, for appellant.

Mark A. Bellavia, Assistant District Attorney, York, for Com., appellee.

Before WIEAND, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered after appellant's conviction by a jury on the charge of driving under the influence of alcohol, 75 Pa.C.S.A. §§ 3731(a)(1) and 3731(a)(4). Herein, the appellant, Thomas L. Kravontka, raises an issue which heretofore has not been expressly addressed by the courts of our Commonwealth: Whether admission of blood alcohol test results, pursuant to the business records exception to the hearsay rule, without the presence of the lab technician who performed the blood analysis violated his Sixth Amendment right of confrontation. In addition, he questions: Whether a proper foundation was laid for the admission of the results of his blood alcohol test; and whether the results of his blood alcohol test were properly admitted under the business records exception to the hearsay rule, 42 Pa.C.S.A. § 6108. Finding no error in the lower court's decision, we affirm.

On March 21, 1987, Officer Jeffrey Foust stopped the appellant after witnessing his vehicle turn left in front of approaching traffic against a steady red light. While asking the appellant for his license and registration, the officer smelled a "strong odor" of alcohol on the appellant's breath, saw his eyes were "blood shot" and noticed his speech was "mush-mouthed and slurred." The appellant was then asked to perform a field sobriety test. Unable to perform the heel-to-toe walk without losing his balance, the appellant stated, "You might as well take me to the hospital for a blood test." The appellant was arrested and taken to Memorial Osteopathic Hospital where, with his consent, a blood test was performed. The blood test revealed the appellant had a .108% blood alcohol content.

At trial, the officer testified about the circumstances surrounding the appellant's arrest. He also testified that, in his opinion, the appellant was not capable of safe driving. Charlene McGrath, laboratory services manager at Memorial Osteopathic Hospital, also testified as a witness for the

Commonwealth. Ms. McGrath testified that she had custody over the hospital's laboratory records which included the record of the appellant's blood test. She also testified concerning the contents of the record of the appellant's blood test, including the result. She noted that Memorial's laboratory was approved by the Pennsylvania Department of Health as a clinical laboratory to perform blood tests. Upon the Commonwealth's request, the court took judicial notice of the fact that Memorial's laboratory was approved to perform blood alcohol analysis. See Pennsylvania Bulletin, Vol. 16, No. 42, October 18, 1986 (semi-annual issue covering the date of appellant's test).

Based on the evidence, the appellant was found guilty by a jury of driving while "under the influence of alcohol to a degree which renders a person incapable of safe driving" and while "the amount of alcohol by weight in the blood of the person is 0.10% or greater." 75 Pa.C.S.A. §§ 3731(a)(1), 3731(a)(4). Post verdict motions were filed and denied. The appellant was sentenced, and this appeal followed.

■ We will first address the constitutional issue raised by the appellant.[1] The appellant alleges that the admission of the record of his blood test by way of the business records exception to the hearsay rule without the presence of the blood analyst violated the Confrontation Clause.[2] While this issue has not been expressly addressed by the courts of this Commonwealth, we addressed an almost identical issue in *Commonwealth v. Karch*, 349 Pa.Super. 227, 502 A.2d 1359 (1986): "May the results of blood testing be admitted into evidence without calling the technician who

1. While we recognize that, as a matter of judicial restraint, a case should not be decided on constitutional grounds if other grounds exist, *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812 (1974), we will however address the present constitutional issue first since it is by far the most significant, and, for the reasons discussed *infra*, we reject all of the arguments addressed by the appellant.

2. It is unclear whether the appellant bases this argument of the United States Constitution, U.S. Const.Amends. VI and XIV, or the Pennsylvania Constitution, Pa. Const. Art. 1, § 9. However, it is not necessary to distinguish between the two for the resolution of this issue.

performed the test as a witness[.]" 502 A.2d at 1360. The majority held that the test results were properly admitted despite the absence of the technician. In so ruling, the court stated:

> It is well established that hospital records are admissible to show the facts of hospitalization, treatment prescribed, and symptoms present. (Citations omitted). In *Commonwealth v. Seville*, [266 Pa.Super. 587, 405 A.2d 1262 (1979) ], a case directly on point with the one *sub judice*, the Court held that blood-alcohol test results were properly admitted into evidence without the presence of the technician who performed the test. The Court reasoned that the test results were admissible under the hospital records exception to the hearsay rule: since a blood-alcohol test is basic and routine, it is highly reliable and thus rises beyond a mere opinion or conclusion to the level of medical fact. "No such doubts as to reliability and accuracy are entertained when a record is offered merely to prove facts ... *or the existence of some readily ascertained substance or chemical within the body." Id.* 266 Pa.Super. at 592, 405 A.2d at 1264. (Emphasis added). Even if the hospital records are hearsay, "... the elements of trustworthiness serv[e] in place of the safeguards ordinarily afforded by confrontation and cross-examination, which justifies admission of the writing or record without the necessity of calling all persons who may have had a hand in preparing it." *Commonwealth v. Seville*, 266 Pa.Super. at 592, 405 A.2d at 1265.

*Karch*, 502 A.2d at 1361. The dissent in *Karch, supra,* however, believed the Confrontation Clause was violated by the admission into evidence of the test results without the technician's presence for cross-examination and directly addressed the issue from a constitutional prospective. *Karch,* 502 A.2d at 1363–1375 (dissenting opinion). The appellant relies almost exclusively upon the dissent to further his argument, an argument which we, like the *Karch* majority, reject.

The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." [3] The main and essential purpose of confrontation is to secure for the defendant the opportunity of cross-examination. 5 *Wigmore on Evidence* § 1395 (Chadbourn rev. 1974). The Supreme Court of the United States has consistently held that the right of confrontation does not require the uniform exclusion of hearsay from evidence. On the other hand, a particular declaration may violate the confrontation clause even though state law provides for its admission as an exception to its evidentiary rule governing hearsay. See generally, *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979) (plurality opinion); *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

When we review a constitutional objection to admission of evidence pursuant to an exception of the hearsay rule, we must remember that, although the right of confrontation is a fundamental right, it "must occasionally give way to considerations of public policy and the necessities of the case." *Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895). As the Supreme Court recognized in *Ohio v. Roberts, supra,* "Significantly, every jurisdiction has a strong interest in effective law enforcement, and in the development and precise formulation of the rules of evidence applicable in criminal proceedings. See *Snyder v. Massachusetts,* 291 U.S. 97, 107, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934); *California v. Green,* 399 U.S., at 171–172, 90 S.Ct., at 1941–1942 (concurring opinion)" *Ohio v. Roberts,* 448 U.S. at 65, 100 S.Ct. at 2538. *See also Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973) (noting that denial of confrontation due to the state's rule of evidence calls into question

3. The Sixth Amendment's Confrontation Clause was made applicable to the States through the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 403–405, 85 S.Ct. 1065, 1067–1068, 13 L.Ed.2d 923 (1965).

the "integrity of the fact-finding process," but may be allowed after close examination of the competing state interest in effective law enforcement). Accordingly, the Supreme Court has not sought to "map out a theory of the Confrontation Clause that would determine the validity of all ... hearsay 'exceptions' *California v. Green*, 399 U.S., at 162, 90 S.Ct., at 1937." *Ohio v. Roberts*, 448 U.S. at 65–66, 100 S.Ct. at 2538. Thus, we are free to develop our own rules of evidence which, on their face, may conflict with the confrontation clause, provided we closely examine the rules and determine that the integrity of the factfinding process is not infringed.

The Supreme Court has stated that "[t]he Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay." *Ohio v. Roberts*, 448 U.S. at 65, 100 S.Ct at 2538. First, "[i]n the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. (Citations omitted)." *Id.*, 448 U.S. at 65, 100 S.Ct. at 2538.

■ However, a demonstration of unavailability is not always required. In *Dutton v. Evans, supra,* for example, the Supreme Court found the utility of trial confrontation so remote that it did not require the prosecution to produce a seemingly available witness. *Ohio v. Roberts*, 448 U.S. at 66 n. 7, 100 S.Ct. at 2538 n. 7. Further enlightenment on the requirement of unavailability was provided in Justice Harlan's concurrence in *Dutton v. Evans*, 400 U.S. at 96–97, 91 S.Ct. at 223:

A rule requiring production of available witnesses would significantly curtail development of the law of evidence to eliminate the necessity for production of declarants where production would be unduly inconvenient and of small utility to a defendant. Examples which come to mind are the Business Records Act, 28 U.S.C. §§ 1732–1733, and the exceptions to the hearsay rule for official statements, learned treatises, and trade reports.

See, *e.g.*, Uniform Rules of Evidence 63(15), 63(30), 63(31); *Gilstrap v. United States*, 389 F.2d 6 (CA5 1968) (business records); *Kay v. United States*, 255 F.2d 476 (CA4 1958) (laboratory analysis).[4] If the hearsay exception involved a given case is such as to commend itself to reasonable men, production of the declarant is likely to be difficult, unavailing, or pointless. (Footnote added).

The type of exception to the hearsay rule present in the case *sub judice* is precisely the type which Justice Harlan, in his concurring opinion in *Dutton v. Evans, supra,* noted would not require the production of the declarant. The courts of this Commonwealth have recognized the inherent "element of trustworthiness ... which justifies admission of the writing or record [of a blood test] without the necessity of calling the persons who may have had a hand in preparing it." *Seville,* 405 A.2d at 1265. Thus, the prosecution need not demonstrate the unavailability of the medical technician because the utility of confrontation is extremely remote due to the inherent reliability of blood tests and their recording.

■ The second aspect of the Confrontation Clause applies once a declarant is shown to be unavailable (or, as is the present case, unnecessary due the remoteness of the utility of confrontation) and limits admission of the hearsay to situations where the declaration is inherently trustworthy. *Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. at 2531. As the Supreme Court stated in *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972),

4. Of special significance is *Kay v. United States*, 255 F.2d 476 (CA4 1958), cert. denied, 358 U.S. 825, 79 S.Ct. 42, 3 L.Ed.2d 65 (1958). Therein, the Fourth Circuit of the United States Court of Appeals, applying the driving under the influence law of Virginia, held that: "Admission of the certificate [record of blood test results] did not deprive the defendant of his right of confrontation by witnesses.... The alcohol content of the blood, the evidentiary fact sought to be proved by the certificate, may be accurately determined by well recognized chemical procedures. It is an objective fact, not a mere expression of opinion, and its proof by introduction of the certificate [without the presence of the chemical analyst] violates no constitutional right of the defendant."

The focus of the Court's concern has been to insure that there "are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury thought there is no confrontation of the declarant." *Dutton v. Evans, supra,* [400 U.S.] at 89, .91 S.Ct. at 220 and to "afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement," *California v. Green, supra,* 399 U.S. at 161, 90 S.Ct. at 1936. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these "indicia of reliability."

*Mancusi v. Stubbs,* 408 U.S. at 213, 92 S.Ct. at 2313. See also *Ohio v. Roberts,* 448 U.S. at 66–67, 100 S.Ct. at 2539.

In *Commonwealth v. Seville, supra,* we commented upon the reliability of hospital records and blood tests.

... [T]he manner in which hospital records are maintained carries safeguards "at least as substantial as the guarantees of reliability of the records of business establishments". *McCormick, [Handbook of Law of Evidence],* supra, at § 313 [ (2d ed, 1972) ]. The practice of recording facts has been standardized in the modern hospital and "these recorded facts are routinely used to make decisions upon which the health and life of the patient depend". *Id.* Current experience teaches the practice of drawing and testing blood for alcohol content is a matter particularly within the ambit of basic and routine hospital procedure. The standardized, precise calculations used in arriving at a final result leave little room for error. "Providing a careful technique is used blood and alcohol tests should not have an error exceeding plus or minus three per cent in alcohol concentrations of 0.1 per cent and over". MacDonald, Alcoholism as a Medicolegal Problem, 11 Clev.-Mar.L.Rev. 39, 51 (1962). Other courts have held that, because of the simple and precise manner by which the level of intoxication may be determined, and the routine procedures by which hospitals administer and record such events, results of blood

alcohol tests may be admitted through the custodian of the records without the presence of the technician who actually performed the test. (Citations omitted).

*Seville,* 405 A.2d at 1265; followed by *Karch,* 502 A.2d at 1361.

Because of the overwhelming "indicia of reliability" inherent in blood-alcohol tests and the records of those test, the cross-examination of the technician who performed the test would be of insignificant utility to a defendant. Moreover, we see little need to parade before a jury every technician who was associated with a defendant's blood-alcohol test simply to explain a procedure which, on a daily basis, is proven most reliable. Instantly, testimony at trial established that the technician, the laboratory, the equipment used for blood testing and the procedures used to test the blood were all approved and certified by the Department of Health for performance of blood-alcohol tests. There is no doubt that cross-examination of the technician concerning the inherently reliable blood test would have been of little benefit to the appellant.

Accordingly, we hold that the appellant's confrontation right was not violated by the admission of the results of his blood alcohol test without the presence of the medical technician.[5]

5. The following are but a few of the many cases from other jurisdictions which have upheld the admissibility of a laboratory report or similar record in the face of a Sixth Amendment objection: *State v. Garlick,* 313 Md. 209, 545 A.2d 27 (1988) (hospital record of test results indicating PCP in defendant's blood was "pathologically germane" to defendant's treatment so as to be admissible under the business records exception to hearsay rule without presence of technician, and admission did not violate right of confrontation); *State v. Russo,* 3 Conn.App. 137, 485 A.2d 1335 (1985) (hospital report admitted under the business records exception to hearsay rule without physician who prepared the report was not violative of the defendant's right to confrontation); *State v. Smith,* 312 N.C. 361, 323 S.E.2d 316 (1984) (statute permitting use of chemical analyst's affidavit to prove blood alcohol concentration of accused, in lieu of his live appearance, established a constitutional permissible procedure attuned to scientific advancements ensuring the reliability of the blood test, and thus did not violate the defendant's right of confrontation); *McLean v. State,* 482 A.2d 101 (Supreme Court of Delaware, 1984) (state and

■ Having determined that the appellant's constitutional right to confrontation was not violated, we will address the remaining issues. First, the appellant contends that a proper foundation was not laid for admission of his blood test results. Under 75 Pa.C.S.A. § 1547(c)(2), chemical tests of blood are admissible in evidence as follows:

(c) Test results admissible in evidence.—In any summary or criminal proceeding in which the defendant is charged with a violation of section 3731 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

(2) Chemical tests of blood or urine shall be performed by a clinical laboratory licensed and approved by the Department of Health for this purpose using procedures and equipment prescribed by the Department of Health. For purposes of blood and urine testing, qualified person means an individual who is authorized to perform those

federal constitutional rights of confrontation were not abridged by admission of hospital record containing result of blood test, without testimony of technician, because of regularity and inherent reliability of such test and hospital record keeping); *Howard v. United States,* 473 A.2d 835 (D.C.Court of Appeals, 1984) (report of chemical analysis of drugs by the DEA are sufficiently trustworthy to satisfy the purpose of the confrontation clause and are admissible under the business records exception to hearsay rule without the chemists presence, since the identity of a controlled substance is determined by a well recognized chemical procedure, the report contains objective facts rather than opinion, and the chemists who conduct the test do so routinely and generally do not have an interest in outcome of the trial); *State v. Kreck,* 86 Wash.2d 112, 542 P.2d 782 (1975) (record of blood test was admissible under the business record exception to the hearsay rule without the testimony of the technician, and defendant's confrontation right was not abridged); *People v. Porter,* 46 App.Div.2d 307, 362 N.Y.S.2d 249 (1974) (admission of log book record of blood alcohol test without testimony of technician did not violate confrontation clause). *See also Kay v. United States, supra; Thomas v. Hogan,* 308 F.2d 355 (CA4, 1962); *State v. Cosgrove,* 181 Conn. 562, 436 A.2d 33 (1980); *State v. Malsbury,* 186 N.J.Super. 91, 451 A.2d 421 (Law Div.1982); *Coulter v. State,* 494 S.W.2d 876 (Tex.Ct.App.1973); *State v. Larochelle,* 112 N.H. 392, 297 A.2d 223 (1972).

chemical tests under the act of September 26, 1951 (P.L. 1539, No. 389), know as "The Clinical Laboratory Act." [35 P.S. § 2151 *et seq.*]

Instantly, the lower court took judicial notice that the Memorial laboratory, at the time of the appellant's test, was an approved laboratory for blood alcohol testing in accordance with the Clinical Laboratory Act. See Pennsylvania Bulletin, Vol. 16, No. 42, October 18, 1986. Ms. McGrath further testified that the laboratory was approved by the Department of Health when appellant's blood test was performed. Thus, the equipment, personnel and procedures of the Memorial Osteopathic Hospital laboratory are qualified and approved by the Commonwealth. Accordingly, we find that a proper foundation was laid under 75 Pa.C.S.A. § 1547(c)(2) to allow admission of the record.

■ Second, the appellant contends that the record of his blood test was inadmissible hearsay which did not qualify under the business records exception. The Uniform Business Records as Evidence Act, 42 Pa.C.S.A. § 6108, sets forth the requirements which must be met prior to admission of a business record, including a hospital record of a blood-alcohol test, into evidence.

(b) General Rule.—A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or otherwise qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

Instantly, there is no question that the document was properly admitted into evidence pursuant to the business records exception to the hearsay rule. Ms. McGrath was the custodian of the laboratory's record. She identified the record as the blood test of the appellant. Her testimony revealed the records were made in the regular course of business contemporaneously with the blood test. She also testified concerning the chain of custody of the blood, the

time at which the blood was taken and the time at which it was tested, the qualifications of the laboratory technologists involved, the type of equipment used to test the blood and the laboratory's status as approved by the Department of Health to perform blood tests. Since a witness called for the purpose of qualifying a business record need not have any personal knowledge of the facts which are reported in the particular record, the fact that Ms. McGrath had no personal knowledge of the test is not pertinent. *Commonwealth v. Kelly*, 245 Pa.Super. 351, 363, 369 A.2d 438, 444 (1976), affirmed 484 Pa. 527, 399 A.2d 1061 (1979). Accordingly, we find that the laboratory record of the appellant's blood test was properly admitted into evidence. *See Karch, supra; Seville, supra; Emerick v. Carson,* 325 Pa.Super. 308, 314, 472 A.2d 1133, 1136 (1984) (blood drawn then sent to another hospital for test, test results incorporated into original hospital's record which was then admitted into evidence).

Having reviewed the appellant's assertions of error and having found them to be without merit, we affirm his judgment of sentence.

Judgment of sentence affirmed.