[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant, who is charged with robbery, kidnaping, second degree assault, and various misdemeanors, has moved to suppress all identifications made of him prior to or during trial, as well as all statements given by him to law enforcement officials. For the reasons that follow, this Court denies the motion to suppress. CT Page 6949
After an evidentiary hearing, the Court finds the following facts. On November 13, 1997, at approximately 2:15 p. m., Linda Lewis was driving a car southbound on Mechanics Street in Danielson with Tobey Falco in the front passenger seat. Falco observed an unknown male on the west-side sidewalk with his hands in the pockets of a person she recognized as Al Smirnow. Smirnow had his hands in the air. It appeared to Falco that Smirnow was being robbed. Falco asked Lewis to stop the car and Falco alighted. As Falco approached the scene she asked Smirnow whether everything was all right. At that point, the unknown male, who previously had his back to Falco, turned around. Falco then saw the unknown male in broad daylight from a distance of twenty to thirty feet for at least several seconds, and possibly a minute. Falco became scared and returned to the car. The unknown male followed her into the car. From the rear seat area, the unknown male put one arm in the back of Falco's neck and one arm around her stomach and yelled to the driver to stop driving or he would kill Falco. Falco at some point also felt a sensation like that of a cat scratching her. At Falco's urging, Lewis started driving towards the Connecticut State Police Barracks. The unknown male quickly fell or jumped out of the car and then proceeded back toward Smirnow.
Lewis and Falco proceeded directly to the Troop D Barracks in Danielson, where Lewis gave the State Police a description of the suspect. Within minutes, the State Police broadcast a dispatch, apparently based on the information given by Lewis, of an armed robbery on Mechanics Street committed by a black male wearing blue jeans and a dark or black leather jacket. Trooper Terence McFadden was in the area and responded to the scene. A short distance away from the reported location of the robbery, at approximately 2:20 p. m., McFadden noticed the defendant, who fit the description in the dispatch. When the defendant saw the Trooper, the defendant turned away. McFadden asked the defendant whether he was involved in a robbery and whether he would agree to go to the barracks. The defendant responded by asking whether it was for an identification. When McFadden replied in the affirmative, the defendant agreed to go. The defendant rode in the front passenger seat. At no point during this encounter did Trooper McFadden draw his gun.[1]
At approximately 2:30 p. m., McFadden arrived at the barracks. The defendant alighted from the front passenger seat and McFadden walked around the rear of to eight feet away from CT Page 6950 where the defendant stood, Falco viewed the defendant. She identified the defendant as the robbery and assault suspect with certainty. The State Police then repeated the procedure for Lewis. Lewis was also certain that the defendant was the suspect.
Trooper McFadden placed the defendant under arrest at approximately 2:30 p. m. After processing, Trooper McFadden advised the defendant of the Miranda rights and the defendant signed a form stating that he had been so advised. The defendant, who had been arrested a number of times in the past, then gave a statement to McFadden which McFadden reduced to writing. The defendant refused to sign the statement.
 I.
The defendant first contends that the State Police seized the defendant on Mechanics Street without probable cause for doing so. The Court finds initially that the police did not seize the defendant but rather that he went on his own volition with the police to the barracks. Our Supreme Court has held that a person is considered seized when "by means of physical force or show of authority, his freedom of movement is restrained." State v. Hill,237 Conn. 81, 87 (1996). "[A] court is to consider whether in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. In the present case, there is no evidence of any "physical force or show of authority," id., such as sirens, emergency flashing lights, a loudspeaker, a display of weapons, or a verbal command. See id. at 89. Rather, the evidence reveals only the mere approach by a police officer, the questioning of the defendant on the street, and the defendant's decision to ride in the front seat of the police cruiser. Such actions do not constitute the seizure of a person. See id. at 91.
Moreover, even if the police did seize the defendant on Mechanics Street, the State would need only reasonable suspicion, and not probable cause, to justify that seizure because, at that point, the State had only detained the defendant temporarily for an identification and not yet arrested him. "[A] police officer may briefly detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime." State v.Trine, 236 Conn. 216, 223 (1996). In the present case, the defendant was in the same location as an apparent robbery and assault at about the same time, met the general description of CT Page 6951 the suspect, and began walking away from the Trooper as the Trooper approached. These facts gave the Trooper reasonable suspicion to detain the defendant for an identification. SeeState v. Rodriguez, 239 Conn. 235, 245-47 (1996).
 II.
The defendant next argues that this Court should suppress the one-on-one show-up identification of the defendant at the barracks by Falco and Lewis because it was "highly suggestive, unnecessary, and improper." To determine whether an identification procedure violated a defendant's due process rights, the required inquiry is two-fold: "first, it must be determined whether the identification procedure was unnecessarily suggestive; and, second, if it is found to have been so, it must be determined whether the identification procedure was nevertheless reliable based on an examination of the totality of the circumstances." State v. Casey, 45 Conn. App. 32, 44, cert.denied, 241 Conn. 924 (1997) (internal quotations omitted).
"An identification procedure is unnecessarily suggestive only if it gives rise to a very substantial likelihood of irreparable misidentification." Id. at 45. In the case at hand, the one-on-one nature of the show-up, coupled with the presence of State Police Troopers at the State Police barracks, rendered the identification suggestive. The identification was not, however, unnecessarily suggestive. Given the prompt sighting of the defendant after the radio dispatch, it was reasonable for the Troopers to consider a one person show-up rather than a line-up. A line-up unquestionably would have taken more time, thus negating the freshness of the witness's memories. A prompt, reliable show-up would even have been in the defendant's interest if he had not been involved in the robbery and assault. The location of the show-up at the barracks also was reasonable given that the defendant agreed to go to the barracks and that such a location would minimize the inconvenience and any trauma to the witnesses. In short, the exigencies of the situation justified the identification procedure employed. See State v. Wooten,227 Conn. 677, 683-87 (1993) (one man show-up one half hour after the crime not unnecessarily suggestive because of exigencies).
Furthermore, the show-up in this case was reliable. The factors relevant to the reliability of an identification procedure are: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of CT Page 6952 attention, the accuracy of the prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. State v. Casey,45 Conn. App. at 46 n. 6. It is true that here the witnesses had a relatively brief time to view the suspect, probably under a minute. But the opportunity to view the suspect was sufficient, particularly as the suspect turned and faced Falco in broad daylight from a distance of twenty to thirty feet away. The witnesses provided the State Police a description of the suspect that, while not detailed, squarely matched the appearance of the defendant when the police located him five minutes later in the area of the crime. Most importantly, the witnesses identified the defendant with certainty only fifteen minutes after they had seen him. Balancing these factors, the Court finds the out-of-court identification of the defendant reliable and admissible.
Because the pretrial identification is admissible, the State is under no Constitutional obligation to show an independent basis for any in-court identification that may take place at trial. See State v. Guertin, 190 Conn. 440, 458-59 (1983). The Court reserves judgment until trial on any other objections that may arise concerning an in-court identification.
 III.
The defendant's final claim is that any statements that the defendant made to the State Police after they arrested him were the product of his illegal seizure and were obtained without a valid waiver of his Constitutional rights. The Court has already found that any temporary seizure of the defendant on Mechanics Street was valid and, given the identification of the defendant by the witnesses at the barracks, no serious dispute can arise concerning the existence of probable cause to arrest him there. Thus there is no basis to claim that the defendant's post-arrest statements stemmed from an illegal seizure.
The defendant's waiver of his rights was also valid. The State Police advised the defendant of the Miranda rights and the defendant signed a "Notice of Rights" form confirming as much. The defendant then proceeded to give a verbal statement. Although there is no evidence that the defendant explicitly stated that he understood his rights and that he agreed to waive them, the fact that he gave a statement after he had received advice concerning his rights, coupled with the fact that the defendant would also have been aware of the Miranda rights from his prior arrests, CT Page 6953 sufficiently establishes a proper, implicit waiver of his Constitutional rights. See State v. Adorno, 45 Conn. App. 187,189, cert. denied, 242 Conn. 904 (1997); State v. Russo,3 Conn. App. 137, 146-48 (1985).[2] The fact that the defendant declined to reduce his statement to writing or sign the statement that the State Police had taken down does not negate this conclusion. See State v. Harris, 188 Conn. 574, 580-81 (1982),cert. denied, 460 U.S. 1089 (1983).
The motion to suppress is denied.
Schuman, J.